The Honorable Dennis W. Smith Senator, District 30 State Capitol Building, Room 426 Jefferson City, Missouri 65101
and
The Honorable B. J. Marsh Representative, District 136 State Capitol Building, Room 103B-C Jefferson City, Missouri 65101
and
The Honorable Joe McCracken Representative, District 139 State Capitol Building, Room 114B Jefferson City, Missouri 65101
Gentlemen:
Each of you has requested an opinion in response to a question concerning Sections 67.638 to 67.645, RSMo Supp. 1989, which sections relate to a "Convention and Sports Complex Fund." Because of the similarity in the questions posed, we have combined your requests into one opinion letter. The question posed by Senator Smith and Representative Marsh is as follows:
 Do any provisions of Sections 67.638
to 67.645, R.S.Mo. (commonly called the "Convention and Sports Complex fund, certain cities and counties") prevent Southwest Missouri State University from contributing, pursuant to Section 67.641.3, to a sports complex fund established by the City of Springfield, where it is shown the City and SMSU will enter into a cooperative agreement to develop and operate a sports, convention, exhibition, and trade facility?
The question posed by Representative McCracken is as follows:
 Does "Southwest Missouri State University" in Springfield, have the authority to apply for state matching funds as authorized in the "Convention and Sports Complex fund, certain cities and counties" statute known as Chapter 67.638
to 67.645?
Sections 67.638 to 67.645, RSMo Supp. 1989, were enacted by the Missouri General Assembly in 1989 as part of House Substitute for House Committee Substitute for Senate Substitute for Senate Committee Substitute for Senate Bills Nos. 295 312, 85th General Assembly, First Regular Session. Section 67.639
provides:
 67.639. Convention and sports complex fund, certain cities and counties may establish, purpose. — Each county and each city, as defined by section 67.638, is authorized to establish, by ordinance or order of the county or city governing body, a "Convention and Sports Complex Fund", for the purposes of developing, maintaining or operating within its jurisdiction, sports, convention, exhibition or trade facilities, which fund shall be separate from the general funds of such county or city, but which shall be subject to the provisions of the charter of such county or city.
Section 67.638 defines, among other terms, the terms "city," "convention and sports complex fund," and "county." Such terms are defined as follows:
 67.638. Definitions. — As used in sections 67.638 to 67.645, the following terms mean:
 (1) "City", a city with a population of three hundred fifty thousand or more inhabitants, located wholly or partially within a first class county with a charter form of government which does not adjoin a city not within a county or a charter city located in a first class county;
 (2) "Convention and sports complex fund", the fund established by a county or city pursuant to the provisions of sections 67.638 to 67.645, for the purposes of developing, maintaining or operating within its jurisdiction, sports, convention, exhibition or trade facilities;
 (3) "County", a first class county, other than a first class county with a charter form of government which adjoins a city not within a county;
* * *
Section 67.641 provides in part:
 67.641. General assembly may make appropriations, conditions, limitations — matching funds required locally. — 1. The general assembly may annually appropriate up to two million dollars from the state general revenue fund to each convention and sports complex fund created pursuant to section 67.639, provided . . . .
* * *
 3. This section shall not become effective unless and until the applicable county or the applicable city which has created a convention and sports complex fund has commenced paying into the convention and sports complex fund amounts at a rate sufficient for the county or city to contribute the sum of two million dollars per calendar year, except that this section shall become effective with respect to any first class county not having a charter form of government and with respect to any charter city located in a first class county not having a charter form of government at the time at which such county or city has commenced paying any moneys into its convention and sports complex fund. The appropriations made pursuant to subsection 1 of this section to any convention and sports complex fund shall not exceed the amounts contributed by the county or city to the fund. The county or city's proportional amount specified in this section may come from any source.
Once the county or city has commenced paying such appropriate proportional amounts into its convention and sports complex fund, the county or city shall so notify the state treasurer and the director of revenue and, thereafter, subject to annual appropriation, transfers shall commence and continue each month pursuant to this section until such monthly transfers are made for thirty years. Moneys appropriated from general revenue shall not be expended until such first class charter county or city located in such first class charter county has paid two million dollars into its fund, or until such first class county not having a charter form of government or until such charter city within a first class county not having a charter form of government has commenced payment of moneys into its fund. [Emphasis added.]
The question posed by Senator Smith and Representative Marsh and the additional information we have been provided indicate that the City of Springfield (hereinafter "the City") and Southwest Missouri State University (hereinafter "the University") contemplate entering into a cooperative agreement to develop and operate a sports, convention, exhibition and trade facility. We have not been provided a copy of any cooperative agreement between the City and the University and express no opinion regarding any such agreement.
The question posed by Senator Smith and Representative Marsh asks if any provisions of Sections 67.638 to 67.645
prevent the University from contributing to a sports complex fund established by the City. There is nothing in the specified sections which prevents the University from contributing to the convention and sports complex fund established by the City. Subsection 3 of Section 67.641 specifically provides that: "The county or city's proportional amount specified in this section may come from any source." [Emphasis added.] However, as stated above, we have not reviewed any cooperative agreement between the University and the City and express no opinion regarding the obligations of the University pursuant to any such agreement.
The question posed by Representative McCracken inquires whether the University has the authority to apply for state matching funds as authorized in the specified sections. Section67.639 provides that each county and each city, as defined by Section 67.638, is authorized to establish a "Convention and Sports Complex Fund." The University is not a "city" as defined in subsection 1 of Section 67.638 and is not a "county" as defined in subsection 3 of Section 67.638. Under Section 67.639
the University is not authorized to establish a "Convention and Sports Complex Fund." Therefore, the University, not being a "city" or "county," cannot directly receive appropriations as a "city" or "county" is authorized to receive under the specified sections. However, a county or city's proportional amount specified in Section 67.641 may come from any source. We again caution you that we have not reviewed any cooperative agreement so that we do not opine on the authority of the University by "cooperative agreement" to provide funds (appropriated to the University) to the City which funds the City may then use to meet the City's proportional amount specified in Section 67.641.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General